DUFRESNE, Judge.
Richard J. Yinet was indicted under R.S. 14:30.1, second degree murder for the killing of a hitchhiker. Following trial, the jury returned a verdict of guilty as charged and the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed.
The defendant now urges two assignments of error.
FACTS
In the early morning of June 26, 1983, defendant Vinet picked up Raymond Plai-sance who was hitchhiking along Fourth Street in Gretna, Louisiana. The defendant then drove to a nearby darkened street where he pulled a gun on Plaisance and told him to get out of the car and that he was going to shoot him. Vinet then twice shot him in the back. Plaisance died of gunshot wounds to the neck and upper chest.
The victim was found in Lapalco Industrial Park on June 26, 1983, by Jefferson Parish Officer Peperone while on routine patrol.
Officer Buras of the Jefferson Parish Sheriff’s Department began investigation which revealed that friends of Plaisance had dropped him off on Fourth Street in the early morning of June 26, 1983. Further investigation brought Officer Buras to Barbara Edgar, the mother of Vinet’s girlfriend, Nancy Edgar. Barbara Edgar revealed to Officer Buras, and again in testimony at trial, that Vinet admitted to her that he had murdered someone and gave her the location of the body in Lapalco Industrial Park.
Officers located Vinet at his residence on July 7, 1983. The gun used to kill Plai-sance was found in Vinet’s kitchen garbage can. Vinet was taken to the Correctional Center on Delhonde Street, where he was again given his Miranda Rights and he then confessed to the murder of Raymond Plai-sance.
ASSIGNMENT OF ERROR NO. 1
The trial court committed reversible error in denying defense counsel’s motion to suppress the confession and inculpatory statements.
Defendant alleges in this assignment that the trial court erred in denying his motion to suppress the defendant’s statements allegedly taken in violation of his Miranda rights and La.C.Cr.P. art. 218.1.
*546 He argues that the statements were inadmissible (not voluntary and without a knowledgeable and intelligent waiver of rights) because the state failed to prove that: (1) defendant waived his rights to interrogation on murder, as well as, armed robbery (the waiver of rights form lists armed robbery as the crime investigated and it does not also list murder); (2) defendant was not intoxicated when he gave the statements; (3) defendant was not denied his right to counsel. (Defense counsel urges this court to find that defendant’s request to see the district attorney should have been interpreted by the officer as a request for counsel and that all subsequent interrogation should therefore have ceased.)
The defendant was twice given his Miranda rights; once at the time of arrest at his home and then again prior to his confession.
The officers present during the defendant’s confession testified that he appeared to understand the charges against him and voluntarily and knowingly waived his Miranda rights. They further testified that no coercion or threats were made to the defendant.
A) Intoxication Issue
All of the arresting officers also testified that the defendant did not appear intoxicated. He did not stagger or have any behavorial manifestations usually indicative of intoxication.
At trial, the defense called to testify the defendant’s father, Daniel Habisreitinger, and Drs. Cox and Shraberg. Defendant’s father testified that defendant could not have committed the murder because on the night of the crime “he was sleeping and I know he was loaded he — he couldn’t get up and every time I got up, well, me I get up all through the night_” Mr. Habisrei-tinger testified that he saw defendant on June 25,1983, in the day and that “[defendant] drank a few beers.”
Defense counsel did establish through these witnesses plus the expert testimony of Drs. Cox and Shrasberg that defendant did abuse both alcohol and drugs. However, in the expert opinion of Drs. Cox and Shraberg, the defendant did know what he was doing at the time of the crime.
In State v. Robinson, 384 So.2d 332 (La.1980), the Louisiana Supreme Court again noted the well established law regarding an inculpatory response or confession which has been challenged on the ground that the accused was intoxicated at the time of interrogation:
Where the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant’s comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Rankin, 357 So.2d 803 (La.1978). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977).
State v. Robinson, supra at 335. See also State v. Meredith, 400 So.2d 580 (La.1981); and see State v. Narcisse, 426 So.2d 118 (La.1983).
In defendant’s statement to Officer Bu-ras, he denied drinking on the evening of the crime. Further, we note that the defendant’s statements were well-oriented in time and place, and given with detail and with specifics of his crime. Included in defendant’s statements was a description of the events which led up to the shooting, where he shot the victim, and how many times. Defendant described his reasons for shooting and that he felt he could kill again because these reasons still existed. Rather surprising is that after the killing, defendant took the stolen car he was driving back to the French Quarter which is *547 where he says he stole it. The court also notes the testimony of Barbara Edgar, that a few days after the crime, defendant confessed to the killing to her. According to expert testimony of Dr. Cox it would be inconsistent for a person claiming memory loss as a result of intoxication at the time of the crime to be able to remember what happened four days after the incident, but not 2 months afterwards.
In conclusion, the evidence supports the trial court’s conclusion that defendant, if intoxicated, was not of such a degree as to negate defendant’s comprehension and consciousness of the consequences of what he was saying. State v. Robinson, supra.
B. Right To Counsel
If the accused indicates in any manner and at any stage of the custodial interrogation that he desires the presence of an attorney, the interrogation must cease until counsel is present. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Germain, 433 So.2d 110 (La.1983); State v. Thucos, 390 So.2d 1281 (La.1980).
Defendant was twice advised of his Miranda rights. Both times he indicated that he understood what those rights were and that he understood the consequences of a waiver of those rights. Further, defendant signed the waiver of rights provision in the form provided him, waiving his Miranda rights.
However, at the hearing on the motion to suppress, Detective Buras did testify that defendant had asked to see a District Attorney. Defense counsel urges the court to find this request equals a request for counsel, and further interrogation should have stopped.
Defense counsel cites no jurisprudence in support of his urgings (neither do we find any basis). This court holds that the defendant did not request counsel, and that his request to see the district attorney is not a request for counsel which would trigger the safeguard (contemplated within the Miranda decision) to cease further interrogation.
We note that Detective Buras testified to the reason given by defendant for his request to see the district attorney, which was to make a deal.
Accordingly, the trial court properly denied defense motion to suppress statements on this basis.
C) Waiver Of Rights Form
The waiver of rights form lists armed robbery as the only charge against defendant. Defense counsel urges this court to find any statements made under this waiver were not then an effective waiver of his rights under Miranda because made without knowledge of the charges against him and for which he was to be interrogated. Although the waiver of rights form did not, in addition to armed robbery, list murder as the crime for which defendant was investigated, it is apparent that defendant knew that he was under investigation for murder, as well as, armed robbery. The court can note the following initialed transcribed statements of defendant’s confession made between Detective Buras and the defendant:
BURAS:
Alright, Richard, do you know what you’re being arrest (sic) for right now?
VINET:
Yeah, I guess so.
BURAS:
Alright, you understand that you are being charged with armed robbery and also murder?
VINET:
Yes.
BURAS:
Okay on June 22 of 83, a Raymond Plaisance was shot and killed off Lapalco and you are under investigation in reference to the murder. Do you understand that?
VINET:
Yeah.
A review of the record indicates the evidence in this case supports the determi *548 nation of the trial court that the defendant’s statements and confession were freely and voluntarily given after an intelligent waiver of rights. There was overwhelming evidence that defendant was not intoxicated at the time of his statements, that he waived his right to counsel during interrogation, and that he fully understood the crimes for which his interrogation and statements would apply. There was an affirmative showing that the statements were obtained in compliance with Miranda. See also State v. Foley, 448 So.2d 731 (La.App. 5th Cir.1984).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 3
The trial court committed reversible error in not allowing the taped statement of the defendant to be played in its entirety or to have the statement read in its entirety. See LSA-R.S. 15:450.
After being taken into custody, defendant gave a taped statement describing how he murdered Raymond Plaisance on an impulse because his girlfriend had broken up with him. In these statements he also implicated himself in other crimes. The taped statement was transcribed.
At trial (out of the presence of the jury) it was brought out that the defense counsel and the prosecutor had stipulated as to those portion(s) of the defendant’s statements which could be read to the jury, and those portion(s) implicating him in other crimes which would not be read to the jury. During trial a dispute arose whether those portions (stipulated to be read to the jury) should be played to the jury, or, simply read to the jury. Defense counsel argued that they should be played, rather than read, because a playing of the statements would reveal defendant’s intoxication at their making and therefore their involuntary nature.
The trial judge ruled that the portion (stipulated by counsel to be read to the jury) should be read to the jury, and that defense counsel, could play the tape of whatever portions he chose to. Defense counsel refused and objected to the ruling.
In State v. Morris, 429 So.2d 111, 121 (La.1983) the Louisiana Supreme Court reiterated this general rule of law:
A defendant is entitled to insist upon introduction of the entirety of a statement sought to be used against him, although, of course, he may waive the benefits of the protective statute. La.R.S. 15:540; State v. Haynes, 291 So.2d 771 (La.1974). Consequently, when the state seeks to introduce a confession, admission or declaration against a defendant which contains other crimes evidence, but which is otherwise fully admissible, the defendant has two options: He may waive his right to have the whole statement used, object to the other crimes evidence, and require the court to excise it before admitting the statement; or, he may insist on his right to have the statement used in its entirety, so as to receive any exculpation or explanation that the whole statement may afford. A third alternative, that of keeping the whole statement out, is not available to defendant, unless, of course, the confession itself is not admissible. State v. Sonnier, 379 So.2d 1336 (La.1981); State v. Snedecor, 294 So.2d 207 (La.1974); 7 Wigmore on Evidence Sections 2100, 2115 (3rd Ed.1940).
See also State v. Tullos, 446 So.2d 390 (La.App. 5th Cir.1984).
Under the circumstances of the instant case, the trial judge ruled that (in addition to the transcribed confession) the tape could be played to the jury under defense counsel’s burden to monitor it, rather than the state’s. This ruling appears a sensible and reasonable application of the best evidence rule. Had the burden, instead, been placed with the state, the trial could then be again subject to the attack of prejudicial error on grounds of introduction of inadmissible other crime evidence.
In the present case, the oral taped confession contained inadmissible other crimes evidence. The officer who prepared the tape did read to the jury (and for the record) the transcribed confession. The officer was then cross-examined. Defense *549 counsel on cross-examination of the officer could have played the portions of the tape read by the officer under the best evidence rule. See also State v. Celestine, 443 So.2d 1091, 1096 (La.1983); State v. Joseph, 454 So.2d 237, 247 (La.App. 5th Cir.1984).
The trial judge’s ruling in permitting Deputy Buras to read to the jury stipulated portions of the accurately transcribed portions of defendant’s confession, subject to defense counsel playing these portions to the jury if he wanted to, was a sensible and reasonable application of the best evidence rule. This assignment lacks merit.
Assignments of Error numbers 2, 4 and 5 were not briefed nor argued and are deemed abandoned. See Uniform Rules— Courts of Appeal, Rule 2-12.4. State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984); State v. Becnel, 441 So.2d 339 (La.App. 5th Cir.1983)..
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.